IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| United States of America, ex rel. Andrew Battiata, M.D. and Jenny Raybon, <br><br> Plaintiffs, <br><br> v. <br><br> Robert Puchalski, M.D. and South Carolina ENT, Allergy, and Sleep Medicine, P.A., <br><br> Defendants. <br>_____ <br><br> Robert Puchalski, M.D. and South Carolina ENT, Allergy, and Sleep Medicine, P.A., <br><br> Third-Party Plaintiffs, <br><br> v. <br><br> Chad B. Gunnlaugsson, M.D. and Orville H. Dyce, M.D., <br><br> Third-Party Defendants. <br>_____ | C.A. No. 3:11-cv-3360-CMC <br><br> OPINION AND ORDER <br> ON MOTION TO DISMISS <br> COUNTERCLAIMS |

Through this qui tam action, Plaintiffs Andrew Battiata, M.D. ("Battiata") and Jenny Raybon ("Raybon") (collectively "Plaintiffs") seek recovery on behalf of the United States for alleged violations of the False Claims Act, 31 U.S.C. § 3729, *et seq*. ("FCA"). The matter is before the court on Plaintiffs' motion to dismiss the seven counterclaims asserted by Defendants Robert Puchalski, M.D. ("Puchalski") and South Carolina ENT, Allergy, and Sleep Medicine, P.A. ("SC ENT") (collectively "Defendants"). For the reasons set forth below, Plaintiffs' motion is granted in full.

**COMPLAINT AND COUNTERCLAIMS**

In order to place the counterclaims in context, the court begins with a brief description of the complaint. Plaintiffs are former employees of Defendant SC ENT. They allege that, during their employment, Defendants improperly obtained payment from one or more federal programs by intentionally submitting bills with incorrect codes, most critically, by using codes which suggested services were provided by or under the supervision of a physician when they were not.

Defendants deny the allegations of the complaint. In addition, they assert numerous affirmative defenses and seven counterclaims. The present motion is directed to the counterclaims.

**Counterclaim Facts.** The facts relevant to the counterclaims are found under the heading "Facts Common to all Counterclaims". Dkt. No. 39 at 16 Counterclaim ¶¶ 7-12. As to Battiata, Defendants allege that "after working [at SC ENT] a very short period of time, he began gathering and taking confidential documents to bring this qui tam lawsuit" despite having "a fiduciary duty to SC ENT . . . to act in its best interest at all times." Dkt. No. 39 ¶ 8. Defendants further allege that Battiata filed this qui tam action roughly two months after the employment relationship was terminated pursuant to a Settlement Agreement. *Id.* ¶ 10.

As to Raybon, who was an employee for approximately five years, Defendants allege that "[d]uring a significant portion of her employment . . . , instead of performing her duties, Relator Raybon downloaded thousands of confidential patient records, took confidential documents, falsified her timesheet, and prepared to bring this qui tam lawsuit." *Id.* ¶ 12. There are no allegations of misuse of confidential information or resulting harm other than the use in and harm which may result from pursuit of this action.

Based on these allegations, Defendants assert seven counterclaims. These counterclaims are summarized below.

**Malicious Prosecution.** The first counterclaim, for malicious prosecution, asserts that this action is "brought without any cause to believe that a False Claims Act violation . . . has been committed." *Id.* ¶ 15. It further alleges that "this action has been brought vindictively and for an ulterior motive; for the purpose of attempting to legally harass, leverage, and to defame Defendants[.]" *Id.* ¶ 16. The alleged injuries include being "forced to defend themselves and to expend money and time in their defense[.]" *Id.* ¶ 18. Defendants seek punitive as well as actual damages under this claim.

**Tortious Interference with Economic Relations.** The second counterclaim is for tortious interference with economic relations. Under this cause of action, Defendants assert that Plaintiffs "negligently interfered with Defendants' existing relationships and contracts [with the federal government and private insurers] by making false statements about Defendants' violations of the False Claims Act and the Stark Act." *Id.* ¶ 24. Defendants further allege that these "false statements have damaged the relationships Defendants have with government agencies that it does business with and damaged Defendants['] expectation that [they] would continue to do business with these and other agencies in the future." *Id.* ¶ 25.

This claim does not suggest any communications or actions beyond those involved in pursuit of this action. Neither does it specify any resulting injury beyond the generic claim of injury to business relationships.

**Abuse of Process**. The third cause of action alleges, in boilerplate terms, that Plaintiffs "have abused the process of this court in a wrongful manner, not proper in the regular conduct of the

3

proceedings . . . , to accomplish a purpose for which said proceedings were not designed, specifically, the assassination of the Defendants' reputations, and retaliation." *Id.* ¶ 28.

Without specifying what information is at issue, Defendants assert that the Plaintiffs "have commiteed willful acts of the submission of false information in the regular conduct of litigation." *Id.* ¶ 29. Defendants allege that they "have suffered damages, loss and harm, including but not limited to their reputation. The damage, loss and harm [are] the proximate and legal result of . . . such abuse of legal process."

**Breach of Fiduciary Duty.** The fourth counterclaim for breach of fiduciary duty alleges that Plaintiffs' "access to confidential information creat[ed] a confidential relationship" and imposed "a fiduciary duty not to publish or disseminate information purported to be privileged or confidential." Dkt. No. 39 at ¶ 34. Defendants allege that Plaintiffs breached this duty and "are seeking to earn substantial compensation" as a result of the breach. *Id.* at ¶ 36. In addition to punitive damages, Defendants seek "injunctive relief and full restitution and/or disgorgement of all revenues, earnings, profits, compensation and benefits which may have been obtained by [Plaintiffs] as a result of such actions, including the imposition of a constructive trust over the proceeds of such actions." *Id.* at ¶ 37.

Defendants do not specify in this counterclaim how Plaintiffs are "seeking to earn substantial compensation" through the breach of fiduciary duty or identify the "actions" which might result in proceeds subject to a constructive trust. This leaves only the inference that the "compensation" and "proceeds" at issue are those which might be obtained as the relators' share of recovery in this action.

**Indemnification and Contribution.**  Defendants' fifth counterclaim is for common law indemnification and contribution.  Under this counterclaim, Defendants allege that "*if the United States sustained damages as indicated in the Complaint*, . . . then such damages were caused in whole or in party by the negligence, culpable conduct, and incorrect or improper billing and coding by [Battiata]." *Id.* ¶ 40 (emphasis added).  Based on these allegations, Defendants assert that Battiata "is liable to the Defendant[s] for common law indemnification and judgment over and for contribution in the full amount of any recovery by the United States . . . or for the portion caused by his relative responsibility[.]" *Id.* ¶ 41 (seeking recovery of "damages, costs, disbursements and attorney fees with respect to this action") .

**Unjust Enrichment**.  The sixth counterclaim, like the fifth, denies liability but asserts that "*if the United States has sustained damages as indicated in the Complaint,* . . . then such damages were caused in whole or in part by the negligence, culpable conduct, and incorrect or improper billing and coding by [Battiata]." *Id.* ¶ 44 (emphasis added).  Defendants then assert that, "[i]f Relator Battiata improperly billed or coded claims submitted to the United States, he has knowingly obtained, conferred, or retained economic benefits acquired at the Defendants' expense . . . under circumstances that render it inequitable for [him] to retain the benefits." *Id.* ¶ 45.  Defendants assert that Battiata "should be ordered to compensate Defendants for the value of the wrongfully obtained benefits and ordered to disgorge all profits derived by this conduct." *Id.* ¶ 46.  In addition they seek to impose "[a] constructive trust . . . on all monies received by the Relator Battiata and on all profits generated by the Relator Battiata as a result of incorrect or improper billing and coding." *Id.* ¶ 47.

**Payment Under Mistake of Fact.**  As with the fifth and sixth counterclaims, the seventh alleges that, "*if the United States sustained damages as indicated in the Complaint*, . . . then such

5

damages were caused in whole or in party by the negligence, culpable conduct, and incorrect or improper billing and coding by [Battiata]." *Id.* ¶ 49 (emphasis added). It then alleges that if Battiata "improperly billed or coded claims . . . [then he] has been paid by the Defendant SC ENT under mistake of fact." *Id.* ¶ 50. Defendants assert that they "acted in reasonable reliance on the accuracy and truthfulness" of Battiata's billing and coding in making payments to Battiata and, on that basis, state that he should be "liable to account for and pay" them any improperly paid amounts.

**DISCUSSION**

**I.    Fourth through Seventh Counterclaims**

Because of their similarities, the court begins with consideration of the fourth through seventh counterclaims for breach of fiduciary duty, indemnity or contribution, unjust enrichment, and payment under mistake of fact. All but the counterclaim for breach of fiduciary duty are *expressly dependent* on a finding of liability under the Complaint as each seeks to shift some or all of the liability back to one or both Plaintiffs "*if the United States sustained damages as indicated in the Complaint*." Dkt. No. 39 ¶¶ 40, 44, 49 (emphasis added). While the claim for breach of fiduciary duty does not contain identical language, in context, it too seeks to recover from Plaintiffs if they obtain any benefit *from this action*. Thus, these state-law counterclaims are all dependent on a finding that Defendants are liable to the United States for violation of the FCA and seek recovery in the nature of a claim for contribution or indemnity.[1]

---

[1] In their motion and opening memorandum, Plaintiffs argued all four of these counterclaims were the equivalent of claims for contribution or indemnification. Dkt. No. 44 at 1, 44-1 at 1, 3-5. Defendants did not challenge this characterization in their responsive memorandum and mention it only in a conclusory statement in their surreply. *See* Dkt. No. 58; Dkt. No. 65 at 4 (noting that a particular decision "only precludes counterclaims for indemnification and contribution" and, consequently, would not apply to "Defendants' counterclaims for . . . breach of fiduciary duty, unjust enrichment and payment under a mistake of fact[.]").

While there is no Fourth Circuit decision on point, those cases which have addressed similar counterclaims have found them unavailable in a qui tam action. *See, e.g., Mortgages, Inc. v. United States Dist. Court,* 934 F.2d 209, 213-14 (9th Cir. 1991) (discussed below); *United States ex rel Miller v. Bill Harbert Intern Const.*, 505 F. Supp. 2d 20 (D.D.C. 2007) (discussed below at 12-13).

In *Mortgages,* the Ninth Circuit Court of Appeals granted mandamus directing the district court to dismiss a variety of claims asserted by defendants against the qui tam relators. The claims at issue, though essentially counterclaims, were asserted by third-party complaint and included claims for breach of contract, breach of the covenant of good faith and fair dealing, breach of fiduciary duty, fraud, negligence, negligent misrepresentation, and conspiracy. *Mortgages,* 934 F.2d at 211; *see also id.* at 211-12 (characterizing claims as "counterclaims"). Despite the varied legal theories, all "sought as relief full indemnification and/or contribution from [relators] against any recovery or judgment in favor of the United States in the FCA action." *Id.* at 211. The Court of Appeals held that the district court's denial of the relators' motion to dismiss was clearly erroneous because "there is no right of indemnity or contribution among participants in a scheme to defraud the government in violation of the FCA." *Id.* at 212. This conclusion was supported, in part, by the following discussion:

> The right to contribution and indemnification are no different in principle from other implied rights of action. . . . A defendant held liable under a federal statute has a right to contribution or indemnification from another who has also violated the statute only if such right arises (1) through the affirmative creation of a right of action by Congress, either expressly or implicitly, or (2) via the power of the courts to formulate federal common law.

*Id.* at 212 (citing United States Supreme Court cases finding no right of contribution under antitrust laws, Title VII, or the Equal Pay Act).

7

Applying the same analysis as the Supreme Court in *Texas Industries, Inc. v. Radcliff Materials*, 451 U.S. 630 (1981), the Court of Appeals examined the legislative history of the FCA, noting both the absence of any mention of contribution or indemnification as well as recognition that the qui tam provisions of the FCA might reward wrongdoers because the qui tam provisions of the FCA were "based upon the idea of 'setting a rogue to catch a rogue.'" *Id.* at 213. With respect to congressional intent, the court concluded as follows: "The FCA is in no way intended to ameliorate the liability of wrongdoers by providing defendants with a remedy against a qui tam plaintiff with 'unclean hands.' Congress did not intend to create a right of action for contribution or indemnification under the FCA." *Id.* at 213.

The court then turned to a consideration of whether such a right should be recognized under federal common law. Noting, first, that creation of rights under federal common law was proper where "necessary to protect [a] uniquely federal interest[,]" the court held that recovery by one wrongdoer against another did not implicate any such interest. *Id.* at 213. The court next considered whether the language and legislative history of the statute indicated a congressional expectation that the "courts will give shape to the statute's broad mandate by drawing on common-law tradition." *Id.* (internal marks omitted). The court found no evidence of such an intent in light of the "comprehensive legislative scheme, including integrated procedures for enforcement," which gave rise to "a strong presumption that Congress did not intend the courts to supplement the remedies enacted." *Id.* Ultimately, the court concluded that "[b]ecause there is no basis in the FCA or federal common law to provide a right to contribution or indemnity in a FCA action, we conclude that there can be no right to assert state law counterclaims that, if prevailed on, would end in the same result." *Id.* at 214.

Several years later, in *United States ex rel. Madden v. General Dynamics Corp.*, 4 F.3d 827 (9th Cir. 1993), a different panel of the same court reversed dismissal of all counterclaims brought by a qui tam defendant against employee-relators. The critical distinction between the counterclaims in *Madden* and those in *Mortgages* was not the theories of relief, which were similar, but the nature of the damages sought. As the court explained, "[c]ounterclaims for indemnification or contribution by definition *only* have the effect of offsetting liability. Counterclaims for independent damages are distinguishable, however, because they are not dependant on a qui tam defendant's liability." *Id.* at 830-31. After considering both defendant's interest in procedural due process, and the remedies available to it under the FCA, which the court found inadequate to fully protect a non-liable defendant's interests, the court concluded that "qui tam defendants can bring counterclaims for independent damages." *Id.* at 831 (but not defining what constitute "independent damages").

Recognizing the challenges presented by its decision in light of *Mortgages*, the court provided the following additional guidance:

> We recognize that our decision may encourage qui tam defendants to bring counterclaims for independent damages instead of indemnification. However, we do not think this will result in an end run around *Mortgages*. . . . [I]t is possible to resolve the issue of a qui tam defendant's liability before reaching the qui tam defendant's counterclaims. . . . If a qui tam defendant is found liable, the counterclaims can then be dismissed on the ground that they will have the effect of providing for indemnification or contribution. On the other hand, if a qui tam defendant is found not liable, the counterclaims can be addressed on the merits.

*Id.* (also noting that "some mechanism must be permitted to insure that relators do not engage in wrongful conduct in order to create the circumstances for qui tam suits and to discourage relators from bringing frivolous actions. Counterclaims for independent damages serve these purposes.").

The Ninth Circuit Court of Appeals again addressed the availability of claims for contribution and indemnity in *Cell Therapeutic, Inc. v. Lash Group, Inc.*, 586 F.3d 1204 (9th Cir. 2009) ("*Lash*"). There, the claims in the underlying federal complaint (against Cell Therapeutic, Inc. ("CTI")) included both claims under the FCA and common law claims for fraud, negligent misrepresentation and unjust enrichment. *Id.* at 1207. CTI initiated a third-party action in state court against Lash, an entity which had provided advice and professional services to CTI. CTI alleged that Lash was responsible for the errors at issue in the federal action and that CTI had been injured in various ways including but not limited to the amounts CTI might be obligated to pay in the federal action. CTI asserted several contract-based claims, including for contractual indemnification, as well as a claim for professional negligence.

The qui tam suit against CTI was settled shortly after it was filed and the third-party action against Lash was removed to federal court. Relying on *Mortgages*, the district court dismissed the third-party claims. The Court of Appeals reversed in a decision that explained that *Madden* had circumscribed *Mortgages* in two respects. *Id.* at 1208-09. First, *Madden* distinguished claims for independent damages from claims for dependent damages. *Id.* at 1208. Second, *Madden* held that "even dependent counterclaims should not be foreclosed until the qui tam defendant's liability is established" because to do so could offend procedural due process. *Id.* (suggesting conflict with *Mortgages* would be avoided by dismissing counterclaims if the qui tam defendant is held liable "on the ground that they will have the effect of providing for indemnification or contribution"). While this court would not read *Madden* to preclude dismissal of *clearly* dependent counterclaims until

10

after a decision on the qui tam defendant's liability under the FCA, it recognizes that the Ninth Circuit is free to interpret and modify its own opinions.[2]

Ultimately, the *Lash* court held "that qui tam defendants may bring third party claims under the circumstances outlined in this opinion." *Id.* at 1213 (noting, *inter alia*, that "[t]he reasons for restricting the ability of a qui tam defendant to seek recovery against a relator are not in play here."). The "circumstances" of the opinion were however, unique in various respects including that the claims at issue in the underlying case ( *United States v. CTI*) were not limited to claims under the FCA (*id.* at 1210), the settlement agreement in that action disclaimed any preclusive effect regarding liability under the FCA (*id.* at 1211), the damages sought against the third party were not limited to

---

[2] The *Lash* decision's attempted reconciliation of *Madden* with *Mortgages* is not entirely clear or persuasive for several reasons. Most critically for present purposes, this court reads *Madden* to allow for immediate dismissal of counterclaims asserted against a relator if those claims are clearly dependent on the qui tam defendant being held liable (thus clearly in the nature of claims for contribution or indemnity). The Ninth Circuit decision in *Lash*, however, suggests that *Madden* narrowed *Mortgages* to the point that dismissal of counterclaims would never be appropriate until after a determination of defendant's liability under the FCA. Such a narrowing would effectively abrogate *Mortgages'* holding that the district court committed clear error by denying a motion to dismiss. Given that *Mortgages, Madden,* and *Lash* were all panel opinions (albeit by different panels), it would not appear that either *Madden* or *Lash* could effect a change which amounted to abrogation of *Mortgages*.

*Lash* also construes *Madden* to save all claims for independent damages even if the qui tam defendant is held liable for FCA violations. *See Lash*, 586 F.3d at 1209 ("*Madden* directly addresses two key questions that underlie our analysis in this case: First, are any of CTI's claims appropriately considered 'independent claims'? Second, has there been a finding of liability that would preclude dependent claims that might in effect give CTI an indemnity?"); *id.*("Under *Madden*, CTI may advance independent claims without regard to an eventual finding of liability under the FCA. . . . It is incumbent on the district court to separate those claims for damages which '*only* have the effect of offsetting liability' from those that are not dependent on a qui tam defendant's liability under the FCA."). While this conclusion may be correct, it seems contrary to language in *Madden* which appears to suggest that even independent claims might be dismissed if they had the effect of indemnification or contribution.

11

recovery of amounts paid to the United States, and the defendant in the third-party action had contractual obligations to CTI which, allegedly, included a contractual duty of indemnification.

For purposes of the present motion, the most critical holdings in *Mortgages*, *Madden*, and *Lash* relate to the distinction between dependent and independent claims.[3] This distinction, and its significance as reflected in various cases, was carefully explained in *United States ex rel. Miller v. Bill Harbert International Const., Inc.*, 505 F. Supp. 2d 20 (D.D.C. 2007).

The counterclaim at issue in *Miller* was for breach of fiduciary duty and sought to shift responsibility for some or all of any damages awarded in favor of the United States to the qui tam relator. In dismissing this counterclaim after a jury verdict on the FCA claim, the district court noted that "[t]he unavailability of contribution and indemnification for a defendant under the False Claims Act now seems beyond peradventure." *Id.* at 26.[4] The district court summarized and explained the rules drawn from various prior decisions, including *Mortgages* and *Madden* as follows:

> Emerging from these cases is the rule that an FCA defendant found liable of FCA violations may not pursue a counterclaim that will have the equivalent effect of contribution or indemnification.
> * * *
> These cases demonstrate that there are two ways in which an FCA defendant's counterclaim may seek "independent damages" and thus be permissible. The use of the word "independent" has led to some confusion, and courts would be better served

---

[3] This court need not resolve *Lash*'s application to third-party claims for purposes of the present motion. It does, however, note that at least one court has held that *Lash* does not support allowing such third-party claims. *See United States v. Campbell*, No. 08-1951, 2011 WL 43013 at **11-12 (D.N.J. 2011) (granting motion for summary judgment on third-party claims for indemnification and contribution because claims were dependent on finding defendant liable under the FCA, but making dismissal without prejudice based on potential for other damages which might be pursued in an independent action *if* defendant was successful in its defense of the FCA action).

[4] The counterclaim was dismissed after a jury verdict for the government on the FCA claim and the court's dismissal of related common law claims as duplicative.

12

to describe the permissible claims as "not dependent on the fact of FCA liability." In short form, claims by an FCA defendant have been properly permitted where the success of the FCA defendant's claim does not require a finding that the defendant is liable in the FCA case.

\* \* \*

These cases come together to form a sensible rule. If a defendant's counterclaim is predicated on its own liability, then its claims against a relator typically will allege that the relator participated in the fraud, or caused the defendant some damage by the act of being a relator, that is, by disclosing the defendant's fraud. The first kind of action seeks contribution or indemnity, rights that are not provided by the FCA because they would deter relators, allow wrongdoers to shift their costs, and would disrupt the intended framework of incentives and punishments established by the FCA. The second kind of action has the same effect of providing contribution or indemnity, with the perverse twist that the relator is not even accused of contributing to the defendant's fraud. If such suits were allowed, they would punish innocent relators, which would be a significant deterrent to whistleblowing and would imperil the government's ability to detect, punish, and deter fraud. The FCA contains several provisions seeking to protect relators from retaliation, and it would run counter to this policy if the Court were to allow retaliatory suits against truthful relators.

*Id.* at 26-29.[5]

Having fully considered the Ninth Circuit decisions, the only circuit court authority directly addressing counterclaims against qui tam relators, *Miller*, and other cases cited by the parties, this court concludes, for reasons addressed in *Mortgages*, that a qui tam defendant may not assert any counterclaim for dependent damages against a relator. As explained in *Miller*, dependent damages

---

[5] In *dicta*, *Miller* suggests the same rule would apply to bar a dependent third-party claim. *Id.* at 28 (discussing *U.S. ex rel. Stephens v. Prabhu*, 1994 W.L. 761237 at \*1 (D. Nev. 1994)). The *dicta* in *Miller* was adopted by the district court in *Campbell*, 2011 WL 43013 (discussed above at n. 4), which granted third-party defendants' motion to dismiss third-party claims seeking contribution and indemnity. *Campbell* at \*9 (although decided at the summary judgment stage, *Campbell* did not require prior resolution of the FCA claim before resolving the motion to dismiss as the same order denies the government's motions for partial summary judgment); *see also United States v. Domestic Indus. Inc.,* 32 F. Supp. 2d 855 (E.D. Va. 1999) (dismissing third-party claims for contribution and indemnification in action brought under the FCA and other statutory and common law theories).

13

are damages which arise from a finding of liability under the FCA against the qui tam defendant. The court further concludes, for reasons addressed in *Madden* and *Miller*, that a qui tam defendant may assert claims for independent damages, meaning damages that would exist regardless of defendant's liability on the qui tam action unless those damages have the effect of indemnification or contribution the issue of effect being one which normally cannot be resolved until after the conclusion of the qui tam litigation.

This court declines to follow *Madden* and *Lash* to the extent either would preclude dismissal of claims for dependent damages until after resolution of the qui tam claims. Instead, the court finds that dismissal should be denied only if a reasonable inference can be drawn that damages sought are independent.[6]

The cases cited by Defendants do not support a contrary rule. All are distinguishable for reasons argued by Plaintiffs. *See* Dkt. No. 60 at 2-5. For example, in *Zahodnick v. International Business Machines Corp.*, 135 F.3d 911 (4th Cir. 1997), the Fourth Circuit allowed recovery on a counterclaim in a case filed under the FCA's *anti-retaliation* provisions. Such an action is necessarily pursued in the plaintiff's individual capacity, not as relator on behalf of the United States.

---

[6] One category of independent damages, costs of defending the qui tam action, requires further discussion. Such damages are "independent" in the sense that they will be incurred whether or not defendant is found liable for an FCA violation. This is a category of damage which should be barred if defendant is found liable under the FCA, because an award of such damages would have the effect of indemnification or contribution. This does not, however, mean that such damages should necessarily be allowed if defendant is found not liable. With respect to this particular category of damage, the FCA provides a specific remedy which sets a high standard for recovery. This may suggest that recovery of fees may *only* be allowed if the statutory standard is met. Alternatively, it might be argued that some or all of a qui tam defendant's fees should be allowed if defendant establishes an independent basis for recovery, such as by establishing a state tort claim for abuse of process or a subsequent claim for malicious prosecution. The court will not resolve this issue at this stage, but raises it now to place the parties on notice of the concern.

14

Thus, allowing a counterclaim in such an action does not raise the same concerns as in a qui tam action.[7] *See also Burch ex rel. United States v. Piqua Engineering Inc.,* 145 F.R.D. 452 (S.D. Ohio 1992) (allowing counterclaim in FCA action which asserted both qui tam and retaliation claims where facts underlying counterclaim related to the personal retaliation claim rather than seeking contribution or indemnification based on plaintiff's alleged participation in the FCA violation).

The other Fourth Circuit cases cited by Defendants are distinguishable from the present action for two reasons. First, like *Zahodnick*, they were pursued in the plaintiffs' individual capacities, not as qui tam plaintiffs seeking recovery on behalf of the government. Second, both involved different statutory schemes (the Federal Employers' Liability Act and the Jones Act). *Cavanaugh v. W. Md. Ry. Co.,* 729 F.2d 289, 294 (4th Cir. 1984) (allowing counterclaim for property damage in action brought under FELA); *Dise v. Express Marine, Inc.,* 476 F. App'x 514, 2011 WL 5588913 (4th Cir. 2011) (allowing counterclaim for property damage in action brought under the Jones Act).[8]

In light of the above authority, the court dismisses Defendants' fourth through seventh counterclaims. The fifth through seventh counterclaims (all but the fourth counterclaim for breach of fiduciary duty) are dismissed with prejudice as each clearly seeks nothing other than dependent damages in the nature of contribution or indemnity. While no facts supporting such a claim have

---

[7] The employer's counterclaim was for breach of a confidentiality agreement and the relief granted was limited to enjoining further disclosure and requiring return of confidential materials.

[8] Precluding counterclaims or third-party claims for indemnity or contribution is, by contrast, *consistent* with Fourth Circuit precedent relating to other federal legislation. *See Lyle v. Food Lion, Inc.,* 954 F.2d 984 (4th Cir. 1992) (noting, in rejecting employer's attempt to transfer liability to a third party under the Fair Labor Standards Act, that "to engraft an indemnity action upon this otherwise comprehensive federal statute would run afoul of the Supremacy Clause of the Constitution and would undermine employers' incentives to abide by the Act.").

15

been suggested in Defendants' submissions, the court will not foreclose the possibility that Defendants might assert a breach of fiduciary duty counterclaim seeking independent damages subject to the repleading requirements below. *See* Discussion § III.

## II. First through Third Counterclaims

Defendants' three remaining counterclaims arguably seek "independent damages." That is, each of these counterclaims seeks damages which do not depend on a finding that Defendants are liable for fraudulent claims under the FCA. It follows that these claims are not necessarily barred under the cases discussed above. However, as explained below each of the claims has other defects which require dismissal without prejudice, subject to the repleading requirements discussed below. *See* Discussion § III.

### A. Malicious Prosecution

One of the required elements of a claim for malicious prosecution is that the challenged proceeding has terminated in the claimants' favor. *See, e.g. Parrott v. Plowden Motor Co.*, 143 S.E.2d 607, 608 (S.C. 1965). It follows that a claim for malicious prosecution cannot be pursued as a counterclaim to the challenged litigation.[9] This counterclaim is, therefore, dismissed without prejudice to filing of such a claim, if otherwise viable, after the completion of these proceedings.[10]

---

[9] It also, necessarily, follows that the claim is not a compulsory counterclaim.

[10] The court expresses no opinion as to whether such a counterclaim may be proper, particularly in light of the comprehensive remedies and controls provided under the FCA itself. *See, e.g.,* 31 U.S.C. § 3730 (c)(2) (allowing Government to dismiss, settle, or restrict participation of relator in action); 31 U.S.C. § 3730 (d) (3) (allowing for reduction of the share of proceeds paid to relator if relator "planned and initiated the violation"); and 31 U.S.C. § 3730 (d)(4) (authorizing court to award "defendant its reasonable attorneys' fees and expenses if the defendant prevails in the action and the court finds that the claim of the person bringing the action was clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment").

### B. Tortious Interference and Abuse of Process

The second counterclaim for tortious interference with economic relations and third counterclaim for abuse of process are not pleaded with sufficient particularity to satisfy the relevant pleading standards. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (requiring pleading of factual allegations sufficient "to raise a right to relief above the speculative level"). Taken together, the factual allegations in the "Facts Common to all Counterclaims" and allegations of these counterclaims, at most, suggest that Plaintiffs initiated this action with some ulterior motive to harm Defendants and that Defendants may suffer unwarranted harm, including harm to their reputations, as a result (at least presuming successful defense of the FCA claim).

There are no factual allegations which suggest that Defendants have, in fact, suffered any interference with economic relations. Neither are there any factual allegations which would support an inference that any harm to economic relations was the result of something other than the litigation itself or otherwise resulted from non- privileged actions. Thus, the factual allegations do not raise a right to relief above the speculative level.

Similarly, as to the abuse of process counterclaim, there are no factual allegations which would support an inference that Plaintiffs have undertaken "a willful act in the use of the process not proper in the conduct of the proceeding." *See, e.g., Argoe v. Three Rivers Behavioral Ctr. & Psychiatric Solutions*, 697 S.E.2d 551, 556 (S.C. 2010) (reciting elements and noting that the abuse of process cause of action "provides a remedy to one damaged by another's perversion of a legal procedure for a purpose not intended by the procedure"). At most, Defendants' allegations support an inference that the action was filed with an ulterior purpose of harming Defendants. This is not enough as improper purpose is only one of the elements of a claim for abuse of process.

**III. Leave to Amend**

Defendants seek leave to amend if the court finds the pleadings insufficient. *See* Dkt. No. 58 at 9 n.1. Despite this, and despite Plaintiffs having pointed to all of the deficiencies noted herein, Defendants do not suggest any facts or changes which might cure the various deficiencies.[11] Neither have Defendants filed a motion to amend or taken other action to amend their answer and counterclaims. The court, nonetheless, declines to foreclose the possibility that Defendants might assert one or more claims for independent damages with respect to the first through fourth counterclaims.

If Defendants elect to assert amended counterclaims, as of right or through motion to amend, they shall set forth their counterclaims with sufficient particularity to support inferences satisfying the elements of the causes of action, the independent nature of the damages, and the absence of privilege.[12]

---

[11] For example, in their response in opposition to the motion to dismiss counterclaims, Defendants assert that their first through third counterclaims "seek redress from relators for damages caused by the false statements that relators made about the Defendants to third parties." Dkt. No. 58 at 9-10. Defendants do not identify the false statements or the third parties to whom they were made, leaving only the inference that the alleged false statements are those contained in the complaint or made in the normal course of pursuing the action (such as cooperation with the government's pre-service investigation). *See also id.* at 11 (stating Defendants "falsely stated to government and private insurers that Defendants routinely and as a matter of company policy violated the FCA and the STARK Act" without identifying to whom the statements were made, in what context, what harm resulted, or how these allegations support counterclaims for malicious prosecution, abuse of process, or tortious interference with economic advantage).

[12] The court does not consider here whether Defendants might amend as of right or on motion. The court does, however, note that Defendants would need to comply with any scheduling order deadlines and attach their proposed amended answer and counterclaims to any motion to amend, in addition to completing the prior consultation requirements before filing such a motion.

**CONCLUSION**

Plaintiffs' motion to dismiss the counterclaims is granted for the reasons set forth above. Dismissal of the fifth through seventh counterclaims is with prejudice. Dismissal of the first through fourth counterclaims is without prejudice subject to the caveats above regarding amendment.

IT IS SO ORDERED.

                                                  s/ Cameron McGowan Currie
                                                  CAMERON MCGOWAN CURRIE
                                                  UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
October 30, 2012